UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BARBARA POWELL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-0423 (RMU) |
| | : | | |
| v. | : | Document No.: | 30 |
| | : | | |
| ALICIA R. CASTANEDA, | : | | |
| Chairman Federal Housing Financing Board, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS

**I.  INTRODUCTION**

This employment discrimination case comes before the court on the defendant's motion to dismiss.  The plaintiff alleges that the defendant: (1) violated the Equal Pay Act ("EPA"), 42 U.S.C. §§ 206 *et seq.*, (2) discriminated against her on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, (3) discriminated and retaliated against her on the basis of race and gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, (4) violated the Rehabilitation Act, 29 U.S.C. §§ 791, 793, 794(a) and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, and (5) created a hostile work environment in violation of Title VII.  Because the court does not have subject matter jurisdiction over the plaintiff's EPA claim, the court dismisses that claim.  Because the plaintiff timely notified the Equal Employment Opportunity Commission ("EEOC") of some of the alleged Title VII and ADEA violations and because the plaintiff does not need to plead a prima facie case at this stage of the proceedings, the court

partially grants and partially denies the defendant's motion to dismiss the claims of discrimination and retaliation on the basis of age, race and gender, and denies the defendant's motion to dismiss the hostile work environment claim. Lastly, the court dismisses the plaintiff's disability discrimination claim for failure to state a claim for which relief can be granted.

## II. BACKGROUND

### A. Factual History

The Federal Housing Finance Board ("FHFB") employed the plaintiff, a Caucasian female in her fifties, as counsel to the Inspector General ("IG"). Am. Compl. ¶ 3. The defendant hired the plaintiff as a part-time employee at the GS-14 level in February 1999. *Id*. ¶ 6. The plaintiff alleges that her supervisor, Edward Kelley, subjected her to offensive treatment, *id*. ¶ 8, and contends that Kelley's abusive behavior stems from a discriminatory and retaliatory animus, *id*. ¶¶ 24, 69. The plaintiff's complaint describes a myriad of allegedly discriminatory events that, in her words, are "totally inexplicable absent the animus of sex-and-race discrimination."[1] *Id*. ¶ 41; *see also id.* ¶ 112. The plaintiff also alleges that Kelley retaliated against her for filing complaints with the EEOC and that Kelley violated her rights under the EPA. *Id.* ¶ 20.

Specifically, the plaintiff states that, the originally "cordial" relationship between the plaintiff and Kelley deteriorated after she requested to take paid leave in October 1999. *Id.* ¶ 23. Afterwards, Kelley made the plaintiff's work environment "punishing . . . by demeaning her daily with derogatory language . . . and his incessant, inappropriate anger," and by insulting or

---

[1] Because the beginning of the complaint states that the plaintiff also brings an age discrimination claim, Am. Compl. ¶ 19, the court assumes that the plaintiff intended to have her factual allegations apply to her age discrimination claim as well.

chastising her on various occasions. *Id.* ¶¶ 23, 25(c), 28, 41. Kelley also required that the plaintiff work more than 40 hours per two week pay period, yet he did not appoint her to a full time position.[2] *Id.* ¶¶ 22-35, 86. The plaintiff also claims that the defendant did not pay her for work done on a business trip to New York in January 2000. *Id.* ¶ 29. Without providing a specific date, the plaintiff alleges that the defendant physically threatened her on a number of occasions. *Id.* ¶ 83.

As their working relationship deteriorated, the plaintiff alleges that the defendant gave her lower performance ratings. In June 2001, for instance, the defendant gave her a "Fully Satisfactory." *Id.* ¶ 38. The plaintiff also asserts that Kelley made comments regarding her sex and gender at the June 2001 review. To support this claim, the plaintiff alleges that Kelley said her "work is too slow," and that she "doesn't know word processing." *Id.* ¶ 41.

The plaintiff further alleges that the defendant retaliated against her when she engaged in EEOC activity. The plaintiff states that the defendant gave her a "Below Standard" rating in December 2001 after the November 2001 EEOC hearings. *Id.* ¶ 43. The plaintiff additionally contends that Kelley did not allow her to attend a training seminar. *Id.* ¶¶ 52(a), 73. According to the plaintiff, Kelley also wrote a letter of reprimand in August 2001 because she was late to a meeting. *Id.* ¶ 42. Similarly, the defendant rated her "Unacceptable" in June 2002 and "imposed a performance improvement plan (PIP)" shortly after she filed a complaint with the EEOC. *Id.* ¶ 39, 44.

Lastly, the plaintiff alleges that the defendant discriminated against her on the basis of

---

[2]   As of the time that the parties submitted their pleadings to this court, the defendant had not hired a full time Counsel. Pl.'s Opp'n at 6.

disability after she fractured her left femur and underwent surgery. *Id.* ¶ 53. The plaintiff asserts that the defendant's failure to allow her to work from home after her surgery was discriminatory. *Id.* ¶ 94.

### B. Procedural History

Prior to the start of this suit, the plaintiff filed three EEOC complaints regarding the alleged discrimination. *Id*. ¶¶ 8, 9, 14. In July 2001, the plaintiff notified the agency's EEOC director that she would be filing a complaint against the FHFB for race and gender discrimination; she formally filed that complaint on September 20, 2001. *Id*. ¶ 8. On June 16, 2003, the plaintiff filed a second complaint for disability discrimination after she underwent hip replacement surgery. *Id*. ¶ 9. In November 2003, the plaintiff notified the agency EEOC director that she would be filing a third complaint alleging retaliation for her two prior EEOC complaints. *Id*. ¶ 13. The plaintiff formally filed the third complaint on December 12, 2003. *Id*. ¶ 14.

This lawsuit consolidates the three EEOC charges that the plaintiff filed between 2001 and 2003. An administrative judge dismissed the three EEOC charges after the plaintiff filed suit in district court. Def.'s Mot. to Dismiss at 17-19. The plaintiff elected to proceed in this court after an administrative judge failed to take final action within 180 days of the plaintiff's submission of her claims to the EEOC. Am. Compl. ¶¶ 1, 134.

On June 23, 2004, the plaintiff filed an amended complaint, alleging three counts of unlawful behavior on the part of the defendant: (1) age, race and gender discrimination; (2) disability discrimination; and (3) retaliation. *Id*. at 34, 40, 42. The first count of the plaintiff's amended complaint alleges that the defendant treated her disparately on the basis of age, gender and race, and that such discrimination was so pervasive that it created a hostile work

environment. *Id*. ¶¶ 71, 77, 90. The second count alleges that the defendant did not accommodate the plaintiff after she underwent hip replacement surgery. *Id*. ¶¶ 53, 94. Finally, the third count alleges that the defendant retaliated against the plaintiff for filing administrative complaints with the EEOC. *Id*. ¶¶ 99, 100.

On November 16, 2004, the defendant filed a motion to dismiss, or in the alternative, for summary adjudication, which the court struck on November 30, 2004. Order Striking Def.'s Mot. to Dismiss or in the Alternative for Summ. J. at 1.[3] On January 14, 2005, the defendant filed a renewed motion to dismiss the plaintiff's claims. The court now turns to that motion.

### III.  ANALYSIS

#### A.  The Court Grants the Defendant's Motion to Dismiss the Equal Pay Act Claim for Lack of Subject Matter Jurisdiction

##### 1.  Legal Standard for Motion to Dismiss Pursuant to 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction"). Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of*

---

[3] The court struck the motion because summary judgment is inappropriate until the plaintiff has had an opportunity for discovery. *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997).

*Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Moreover, the court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).  The D.C. Circuit has noted that courts should consider Rule 12(b)(1) jurisdictional challenges before Rule 12(b)(6) challenges.  *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)).

### 2.  The Plaintiff's Equal Pay Act Claim

The defendant moves to dismiss the plaintiff's EPA claim for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).  Def.'s Mot. to Dismiss at 23.  The EPA prohibits employers from paying lower wages to employees of one sex for jobs requiring equivalent skill, effort and responsibility.  29 U.S.C. § 206(d).  All EPA claims brought in district court must satisfy the jurisdictional requirements of 28 U.S.C. §§ 1491 (the "Tucker Act") and 1346(a)(2) (the "Little Tucker Act").  *Doe v. Dep't of Justice*, 753 F.2d 1092, 1101 (D.C. Cir. 1985); *Weber v. Hurtgen*, 297 F. Supp. 2d 58, 62 (D.D.C. 2003).  The Little Tucker Act confers concurrent jurisdiction in a federal district court and the Court of Federal Claims for non-tort civil actions against the United States for amounts not exceeding $10,000.  28 U.S.C. § 1346(a)(2)).  For claims exceeding $10,000, however, jurisdiction lies exclusively with the Court of Federal Claims.  *Id*. at § 1491.

Even when a plaintiff does not specify the amount of back pay that she seeks, the court may infer, based on her salary, or based on a comparison between her salary and that of a similarly situated male co-worker, that her complaint should be read to seek more than $10,000.  *Doe v. Dep't of Justice*, 753 F.2d at 1101 (inferring that the plaintiff sought more than $10,000 in back pay because she was a GS-14 attorney earning approximately $45,000 each year and seeking back pay for more than two years of unemployment after discharge); *Schrader v. Tomlinson*, 311 F. Supp. 2d 21, 25 (D.D.C. 2004) (inferring that the plaintiff's claim for back pay from 1997 through 2004 exceeded $10,000 because the annual difference between the plaintiff's GS-12 salary and her male comparator's GS-13 salary was approximately $10,000).

The plaintiff does not identify a precise amount of damages, but makes only a general

request for back pay and punitive damages. Am. Compl. at 53. Because the plaintiff is a GS-14 employee receiving an annual salary of $94, 976, Def.'s Mot. to Dismiss at 23, the court infers that she seeks more than $10,000 in damages for the events alleged to have occurred over the course of five years. Additionally, the plaintiff has conceded that she seeks more than $10,000 in damages because she does not counter the defendant's EPA argument. *Day v. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) (stating "[i]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded"); *see also* LCvR 7(b); *Fox v. Am. Airlines*, 389 F.3d 1291, 1294-95 (D.C. Cir. 2004). Accordingly, the court grants the defendant's 12(b)(1) motion to dismiss the EPA claims for lack of subject-matter jurisdiction.

### B. The Court Grants in Part the Defendant's Motion to Dismiss the Plaintiff's Discrimination Claims for Failure to Exhaust Administrative Remedies

The defendant moves to dismiss the plaintiff's discrimination claims on the ground that the plaintiff failed to exhaust her administrative remedies. Def.'s Mot. to Dismiss at 24. A court does not have subject matter jurisdiction over a claim unless the plaintiff complies with Title VII's exhaustion requirement. *Fowler v. District of Columbia*, 122 F.Supp.2d 37, 39 (D.D.C. 2000). Accordingly, before turning to the plaintiff's motion to dismiss pursuant to Rule 12(b)(6), the court needs to first consider whether it has subject matter jurisdiction over the plaintiff's discrimination claims. *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler & Kreindler*, 985 F.2d at 1155-56).

#### 1. Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII and the ADEA, a court has authority over only those

claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12. (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### 2. The Court Dismisses Some of the Plaintiff's Claims Because She Failed to Exhaust her Administrative Remedies

The defendant argues that the plaintiff failed to exhaust her administrative remedies by not contacting an EEOC counselor within 45 days after each alleged discriminatory event occurred. Def.'s Mot. to Dismiss at 24. The plaintiff, however, argues that the defendant's

actions constitute "a hostile work environment, which essentially eliminates the 45-day filing period." Pl.'s Opp'n at 27.

"A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts constituting the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). The court in *Morgan* distinguished discrete acts of discrimination from hostile work environments in the following manner:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' . . . The 'unlawful employment practice' [in hostile work environment claims] . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*Id*. at 114-15; *see also Anderson v. Zubieta*, 180 F.3d 329, 337 (D.C. Cir. 1999) (holding that where "'discrimination is not limited to isolated incidents, but pervades a series or pattern of events which continue to within [45] days of the filing of the charge . . . , the filing is timely . . . regardless of when the first discriminatory incident occurred.'") (alteration in original) (quoting *Laffey v. Nw. Airlines*, 567 F.2d 429, 473 (D.C.Cir.1976)). The plaintiff's complaint contains a discrete list of discriminatory actions taken against her by the defendant. Her claims, moreover, include the very type of discrete acts, such as proposed termination and failure to promote, which are identified in *Morgan* as separate, actionable, unlawful employment practices.

Furthermore, "the theory of continuing violation must be guardedly employed because within it are the seeds of the destruction of statutes of limitations in Title VII cases." *Childers v. Slater*, 44 F. Supp. 2d 8, 18 (D.D.C. 1999) (quoting *Cones v. Shalala*, 945 F. Supp. 342, 346

(D.D.C. 1996)). "To conveniently cast all the allegations in this complaint as a related series of discriminatory or retaliatory actions would permit this plaintiff to bypass the Title VII administrative process." *Childers*, 44 F. Supp. 2d at 18. The court accordingly dismisses as untimely all allegations stemming from discrete actions which occurred more than 45 days prior to: (1) July 20, 2001,[4] (2) June 16, 2003,[5] and (3) November 7, 2003.[6] As a result, the only discrimination and retaliation claims that were timely pursued at the administrative level are the claims regarding: (1) the June 2001 performance review and the allegedly discriminatory comments made at the review, Am. Compl. ¶¶ 29, 41; (2) the June 2001 decrease in hours, *id*. ¶ 35; (3) the August 2001 and April 2004 letters of reprimand, *id*. ¶¶ 7, 42, 67; (4) the September 25, 2001 denial of training,[7] Pl.'s Opp'n at 14; and (5) the failure to convert the plaintiff's part time position into a full time position.[8] *Id.* at 13.

---

[4] Specifically, the court dismisses the allegations regarding (1) the October 1999 denial of paid leave and (2) the January 2000 business trip to New York with Kelley. Am. Compl. ¶ 8.

[5] The following alleged discriminatory acts took place more than 45 days before June 16, 2003: (1) the October 11, 2001 memorandum regarding the plaintiff's failure to follow office procedures, (2) the December 2001 "below standard" performance rating, (3) the June 2002 "unsatisfactory" performance rating, and (4) the June 2002 PIP.

[6] The August 2003 notice of proposed removal occurred more than 45 days before the plaintiff notified an Equal Employment Opportunity Commission ("EEOC") counselor on November 7, 2003.

[7] The plaintiff alleges that the two reprimand letters and the September 2001 denial of a training opportunity constitute retaliation. Accordingly, the exhaustion requirement does not apply to those allegations. *Lofton v. Atwood*, 1998 WL 700155, at *1 (D.C. Cir. 1998) (holding that "[p]laintiffs asserting a Title VII claim of retaliation for filing a previous EEOC charge need not exhaust administrative remedies before suing in federal court").

[8] The plaintiff alleges that the defendant refused to hire her for the full time position on numerous occasions, but she does not state the dates of these refusals. She also refutes the defendant's understanding of the dates of these occasions. Pl.'s Opp'n at 13. Accordingly, the court does not have enough information to evaluate whether these claims are barred for failure to exhaust administrative remedies or not.

### C. The Court Grants in Part the Defendant's Motion to Dismiss the Plaintiff's Claims for Failure to State a Claim for Which Relief Can be Granted

### 1. Legal Standard for Motion to Dismiss Pursuant to 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton,* 92 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley*, 355 U.S. at 47). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir.

2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

### 2. The Court Dismisses Some of the Plaintiff's Discrimination and Retaliation Claims

The defendant argues that the court should dismiss the plaintiff's complaint because the plaintiff has failed to plead a prima facie case for her discrimination and retaliation claims. Def.'s Mot. to Dismiss at 26, 33, 36. An employment discrimination complaint, however, need not include specific facts establishing a prima facie case to survive a motion to dismiss.[9] *Swierkiewicz*, 534 U.S. at 511; *Sparrow*, 216 F.3d at 1114. But, a plaintiff "must present facts that would establish the elements of each claim." *Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe-Fitting Indus. of the U.S. and Canada*, 370 F.Supp.2d 118, 128 (D.D.C. 2005).

As discussed *supra*, five of the plaintiff's discrimination and retaliation claims are not barred for failure to exhaust administrative remedies: (1) the June 2001 performance review and the discriminatory comments made during the review, Am. Compl. ¶¶ 29, 41; (2) the June 2001 decrease in hours, *id*. ¶ 35; (3) the August 2001 and April 2004 letters of reprimand, *id*. ¶¶ 7, 42, 67; (4) the denial of training in September 2001, Pl.'s Opp'n at 14; and (5) the failure to convert the plaintiff's part time position into a full time position. *Id.* at 13. The allegations about the

---

[9] Notwithstanding this liberal pleading standard, a plaintiff can plead herself out of court by alleging facts that render success on the merits impossible. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000). Consequently, the "[c]ourt should examine the plaintiff's prima facie case to inquire whether the [defendant] is entitled to victory." *Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 29 (D.D.C. 2004) (citing *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998)).

June 2001 review, the two letters of reprimand, and the denial of permission to attend a training session do not make out a claim for which relief can be granted because, even when the allegations are taken as true, these actions are not adverse employment actions. *Brown v. Brody*, 199 F.3d 446, 455 (D.C. Cir. 1999) (holding that an adverse employment action is a prerequisite to bringing a Title VII claim). Specifically, the "Fully Satisfactory" June 2001 performance rating, the two letters of reprimand, and the denial of a training opportunity do not constitute a "change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *see also Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001). Indeed, the plaintiff does not allege that these actions impacted her employment status or benefits at the FHFB.[10]

In short, the only actions that are not barred for failure to exhaust administrative remedies and which make out a claim for which relief can be granted are the plaintiff's allegations that Kelley reduced her work hours in June 2001 and that she was not selected for the full time counsel position on a number of occasions.[11]

### 3. The Court does not Dismiss the Hostile Work Environment Claim

The defendant argues that the conduct alleged by the plaintiff does not support a claim for hostile work environment because the plaintiff does not allege any physical touching and the conduct that she does allege is neither severe nor pervasive. Def.'s Mot. to Dismiss at 31-32. In

---

[10]     Furthermore, the plaintiff's salary has increased during her time at the FHFB. Pl.'s Opp'n at 7.

[11]     The court emphasizes that it does not express an opinion as to whether these claims are meritorious.

analyzing a hostile work environment claim, a court should consider any physical touching and the severity of the conduct, but those two factors alone are not dispositive. *Morgan*, 536 U.S. at 116. Because the plaintiff has alleged some conduct in support of her claim, including the defendant's behavior, physical and verbal threats, and related discriminatory actions, the court does not dismiss her hostile work environment claim at this stage of the proceedings.

### 4. The Court Dismisses the Plaintiff's Disability Discrimination Claim[12]

The defendant argues that the plaintiff's Rehabilitation Act claim for disability discrimination should be dismissed because the plaintiff does not have a qualifying "disability." Def.'s Mot. to Dismiss at 33-34. To prove that she has a disability, the plaintiff must demonstrate that her hip replacement surgery "substantially limits" one or more major life activities. 42 U.S.C. § 12102(2). For the impairment to substantially limit major life activities, "[t]he impairment's impact must . . . also be permanent or long term" *Toyota Motor Mfg., Ky., Inc.*, 534 U.S. 184, 185 (2002); *see also* 29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii) (2001).

The plaintiff admits that the injury she suffered was temporary. Am. Compl. ¶ 94; Pl.'s Opp'n. Her fall and subsequent surgery took place in February 2003, *id.* ¶ 53(b), and she returned to work in July 2003, *id.*, Ex. 5. Short-term physical impairment while recuperating from surgery does not constitute a disability. *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 369 (4th Cir. 2002) (holding that a nine month leave of absence to recover from surgery does not show that the plaintiff had a long-term disability); *Sutton v. Loder*, 185 F.3d 1203, 1209 (11th

---

[12] The plaintiff brings her disability discrimination claims under both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. The ADA, however, does not cover federal employees. The Rehabilitation Act, on the other hand, applies to federal employees and "expressly incorporates the standards of the ADA for claims of employment discrimination." *Lester v. Natsios*, 290 F. Supp. 2d 11, 23 n.2 (D.D.C. 2003).

Cir. 1999) (holding that "temporary inability to work while recuperating from surgery does not constitute" a disability for purposes of the Rehabilitation Act); *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996); *McDonald v. Commonwealth of Pa., Dept. of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 96 (3d. Cir. 1995). According to the complaint, the plaintiff returned to work a few months after her surgery. Am. Compl., Ex. 5. Due to the short duration of the plaintiff's impairment, the court concludes that she did not have a disability covered by the Rehabilitation Act and dismisses her claim.

### IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the plaintiff's Equal Pay Act claim. The court grants in part and denies in part the defendant's motion to dismiss the plaintiff's claims of discrimination and retaliation on the basis of age, race and gender. The court denies the defendant's motion to dismiss the hostile work environment claim, and grants the defendant's motion to dismiss the disability discrimination claim. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of September 2005.

RICARDO M. URBINA
United States District Judge